The last case on our agenda today and for this term is agenda number 18, number 130323, Habdad v. County of Lake, et al. Counselor Leopold, are you prepared to proceed? I am, Your Honor. Thank you. Good morning, Your Honors. Counsel, may it please the Court. The Second District's decision sanctions noncompliance with the Road Improvement Impact Fee Law and in doing so provides a map for those governmental entities who wish not to comply, not to comply. Specifically, the Road Improvement Impact Fee Law, which I will refer to as the IFL or the Impact Fee Law, is imposed upon a landowner or developer, according to the Second District, only if that fee is imposed at the time of the issuance of a building permit or a certificate of occupancy. And if it is not imposed at those two times, the Impact Fee Law, as the Second District stated, is irrelevant, inapplicable. That makes governmental entities' compliance with the Road Improvement Impact Fee Law voluntary or an elective. Because if a governmental entity wishes not to comply with the Impact Fee Law, all it has to do is impose the Impact Fee at any time other than those two specific instances. For example, one can impose an Impact Fee at the time of application for a building permit. The law doesn't apply. And I could go on, as could anyone who thinks about the many circumstances attendant to a development of property and the many applications and government approvals that are necessary in order to develop property. But according to the Second District, the only two times that that law applies, issuance of building permit or issuance of certificate of occupancy. Is that right in the definition in the statute of Road Improvement Impact Fee? The statutory definition says exactly that. It does, Your Honor, but one has to read that definition in the context of what the legislature intended, expressly intended, and for what the law is intended to achieve. Those two instances are the times at which the fee should be assessed. And if one reads the entire Impact Fee Law, that's what one concludes. The time to assess the fee is at the time of issuance of a building permit or the issuance of a certificate of occupancy. Why? Because those are the points in time at which the impact of the development activity will be felt by the road system. And therefore, it is fair at those points in time to require the landowner developer to pay the fee. It's also closer in time to when the developer who's paying the fee will realize whatever monies it is going to realize by whatever the development activity is. So if we take it in the case of a residential development, if you're paying at the time of issuance of a building permit, that's when the impact to the road system will be felt. And that will be at a point in time close to when that home will be built and sold and monies will be realized from that sale. And therefore, it lessens the financial impact. Why is that important? Isn't the impact fee law, it requires what I call a tight fit. Doesn't it require the fee to be based on the proportionate impact that whatever development is going to be had on the county or on the roads? It requires a proportionate charge based on the impact, right? It's an exacting analysis, Your Honor. You are correct, Your Honor. What it requires is it's a planning device. It requires that the governmental entity looking to assess the fee make certain land use assumptions. That's the statutory term. It requires what I call a tight fit between the impact and how much is being charged, right? A tight fit. Another way to express tight fit is it requires that the new development and the traffic capacity impact of that new development and the costs attended to that road improvement be specifically and uniquely attributable to that new development. A tight fit. And the reason for that is because if it wasn't done that way, then that would be like an impermissible taking if a development is being charged money for public use that has nothing to do with their impact. The county is not allowed to do that. Is that correct? It is not, Your Honor. It becomes, in essence, at that point, a user tax. Keep in mind under the statute, it specifically does not allow an impact fee to be assessed against an existing road, even though a new development will certainly impact the road system. Okay, so that's an impact. Let's talk about the IGA. What's the purpose of that? The IGA, and I think the temporal issues are important here. The IGA was created in 2009. The IGA in 2009 contemplated certain improvements primarily to Peterson Road to create a more development-friendly transportation system, certainly a laudable government initiative. However, at that point in time, there wasn't the ability to make that tight fit analysis. They're two different statutes, right? They're not for the same thing, are they? The Intergovernmental Agreement is an agreement. It's an agreement that requires the imposition of this impact fee to be applied to landowners by the municipalities that signed on to that agreement. And it requires an impact fee to be paid. It assesses the impact fee without any of the analyses that's required by the impact fee law. There were no land use assumptions made with the assistance of an advisory committee. There were no road impact assessments made using traffic engineering principles. All requirements of the rigorous analysis of the road improvement impact fee. It was a per acre assessment. In this case, though, the plaintiffs voluntarily sought to annex their land to the village. And then the village and the plaintiff were free to negotiate how that annexation should take place. Isn't that? I mean, that's how I understand it. And as part of that agreement on negotiation, that's how that IGA came into play. I respectfully under- I mean, that's their argument. I don't think so, Your Honor. The IGA was made by the Lake County and four municipalities in 2009. The annexation agreement, and there were three of them, the first of which was made in 2018. Nine years later, the second one in 2019, and the third in 2021. The plaintiff was not a party to the Intergovernmental Agreement. Private parties aren't parties to Intergovernmental Agreements. That's when the fee was assessed. In none of the annexation agreements, and I'll speak to the third. In the first two, no mention of an impact fee, let alone an agreement by the plaintiff to pay an impact fee. Same is true with respect to the second annexation agreement. In the third annexation agreement, this case was pending. And all the plaintiff agreed to do in that instance is, and there was no claim by the county against the plaintiff. The claim that the county was making was against the village of Mundelein, for the village of Mundelein to pay the fee, because of the village's failure to require the landowner to pay in the annexation agreement. So that third annexation agreement, all the plaintiff agreed to do is, if it loses this lawsuit, and the village of Mundelein is assessed the fee, the plaintiff will reimburse the village of Mundelein. In essence, it was payment under protest. It was payment without even having to make the payment. But it was only an agreement to reimburse the village of Mundelein if this lawsuit fails. So there is no agreement, which the plaintiff landowner was a party to, where it agreed to pay the impact fee. And that's, I think, Your Honor, an important distinction here, because the county and the second district make reference to an annexation agreement. But there is no annexation agreement where this plaintiff agreed to pay the fee. If we just compare what the intergovernmental agreement does and what the IFL requires, the impact fee law requires, the impact fee law requires an advisory committee to assist the governmental entity in developing the land use assumptions, which will then lead to whatever the road impact determination is. That advisory committee is comprised of governmental officials, but it's also comprised of members of the development community, in order to assist in making realistic land use assumptions, in order to determine what the actual traffic impacts will be on the local road system, and which necessitate whatever road improvements are contemplated by this new development. Then there's a determination of the additional traffic capacity attendant to each new development, assuming we're talking about a regional improvement. Again, all of that leads to a public hearing, a public vetting of not only the land use assumptions that are being made in order to determine the fee, but also the traffic impact or traffic capacity assumptions that are being used to develop the fee. A rigorous analysis. The goal of which, according to the IFL, is to come up with a fair and equitable fee that only charges property owners what the actual impact of their development will be on the road system and only make them pay that fair and equitable amount, what the impact fee law calls one's proportionate share. Conversely, the intergovernmental agreement, and the fee assessed here, is made to address, quote, future development, end quote. That's the end of the analysis. As far as traffic, it's to address, quote, anticipated traffic demands. That's the end of the analysis. No application of traffic engineering standards and principles required by the IFL. And third... Are you saying that the IGA should require those things? Because the statute doesn't require that in order to enter into an intergovernmental agreement. But the state... I'm sorry, go ahead. But the statute allows governments to come together and reach those agreements without doing that kind of analysis. Not if they're going to assess an impact fee. And this one assesses a traffic impact fee against landowners. I agree with Your Honor that intergovernmental agreements are encouraged in order to reach... well, for obvious reasons. But there's no question that intergovernmental agreements are encouraged. But if one is going... and an intergovernmental agreement is going to require... as was the case here, Lake County says municipalities, we the county want to recruit 50% of the cost of these new road improvements. And the way we're going to recruit that 50% cost is we want you municipalities, as you approve development, which includes annexing property into your municipality, we want you to assess and collect the fee and give it to us so that we can recruit our 50%. That's it. It's clearly stated to be a traffic improvement impact fee. And they do it on a per acre basis without doing any of the rigorous analysis of the impact fee law. Why? It's an end run. And I'm not saying that flippantly. I'm saying that to be descriptive. Counsel, couldn't it just be like arm's length contractual negotiations that one party is willing to pay an impact fee that may be higher than if they were seeking to, say, build something on their own property if it was a small house or something? That's a different kind of impact fee than parties who are doing an arm's length negotiation for purposes of having their development annexed into one of these towns or municipalities. Isn't that like just a contractual negotiation? No, Your Honor, for one simple reason. They let one party out, the party paying the fee. But to go back to that, any time that you enter into an annexation agreement, you're subject to the rules and the regulations and the ordinances of the entity that you come into. And you don't get to negotiate whether you've got a hookup to the sanitary sewer. If there's sewer, you have to participate in that. Why is this any different? And that entity, Your Honor, to come back to this point, that governmental entity is allowed to assess a road improvement impact fee, absolutely, if it complies with the law. The road improvement impact fee law is designed to address what governmental entities are required to do. Your Honor is right. There's nothing wrong with assessing a traffic impact fee in an annexation agreement as long as that fee is determined consistent with Illinois law and constitutional protections. Otherwise, it's a taking. And that's what we have here. The underlying principle that the court is suggesting is an unremarkable accepted principle. Yes, these fees can be assessed. But the road improvement impact fee law is directed specifically at governmental entities. That's what they are required to do in order to determine the amount of the fee and then assess that fee against property owners. Otherwise, we don't have that protection that the U.S. Supreme Court and this court has recognized. We don't have the assurance that that fee against the property owner is going to be proportionate to the impact to be felt by that new development. We don't have that type fit, as Your Honor earlier pointed out, that specifically and uniquely attributable standard map. There are many jurisdictions throughout the country that don't have that exacting standard set forth in the IFL. Illinois does. And that has been affirmed and recognized by this court in the Northern Illinois Homebuilders case. If the county is allowed, any county, any governmental entity is allowed the end run that was done here, and then that's supported by the second district opinion that says an impact fee, a road improvement impact fee only applies in two specific circumstances, then we don't have that protection any longer. Then the only time we will have that protection is when a governmental entity seeking to assess the fee chooses to apply the rigorous standards that are required. That is not what the Illinois legislature intended, and that is not what this court held in Northern Illinois Homebuilders, and that is not what the United States Supreme Court will support in any of the cases that discuss the essential nexus that needs to be made between a road improvement impact fee and a new development. Because when we're allowing, in this case, the county to assess a road improvement impact fee on a per acre basis without regard to what the development activity is, let alone its actual impact, then we don't have that which is fair and equitable. Counsel, how is the Northern Illinois decision relevant to whether the act applies to IGA fees when the ordinances in that case were adopted pursuant to the act? I mean, why should we be looking at that? Because in that case, Your Honor, DuPage County was the second of the two ordinances that were in play and that the court upheld in Northern Illinois Homebuilders, was an instance where the court did recognize that DuPage County, in their second traffic impact fee ordinance, did apply traffic engineering principles, did make specific determinations and estimates as to the development activity that was going to be generated by the properties to be assessed the fee. And we have the county imposing the fee directly against the property owners. We don't have that here. We don't have that analysis. This court, or any court, doesn't have the opportunity to look behind the curtain, if you will, as to how did the county, if they made any analysis, how did they determine this per acre fee? What, let alone, was it done according to the rigorous standards of the IFL? Did they take into account what the new development activity against the properties assessed were going to be? Did they make a specific determination as to what traffic would be generated by those new developments in order to arrive at a fee that's fair and equitable? No, we just have the fee being assessed on a per acre basis. Moreover, and one of the examples we point out, this property owner is being assessed the same fee on a per acre basis as a truck terminal next door. Now, by any measure, there is almost nothing more impactful to a roadway system than a truck terminal. That is big, heavy trucks, day in, day out, 24-7, using a road system. But they're assessed to the same fee. And that's just by way of example to what the property is next door. Because the fee was assessed on a very broad, if not the broadest way to assess a fee, on a per acre basis. Let alone it being assessed at the time of annexation. My time is up, so unless there are questions, I thank you for your time, Your Honor. Thank you very much, Counsel. Counsel for the appellee. Good morning. My name is Jack Christensen. I'm here with my co-counsel, Gunnar Gunnarsson, with the Lake County State Attorney's Office. We represent the Appalachian County of Lake in this manner. We are requesting that this court affirm the second district decision which, in so doing, affirmed the granting of summary judgment in favor of the county. And denied the cross motions for summary judgment brought by plaintiffs. And in so doing, entered judgment in favor of the county on count one of the complaint for declaratory judgment. In so doing, and as I'm going to discuss in more detail, the second district properly found that one, the impact fee lies on application here. And it doesn't have application here because a fee that's charged by way of an annexation agreement between a municipality and a developer does not fall within the definition of a road impact fee. And consequently, it's not subject to the impact fee law. Contrary to what the plaintiff's counsel has been arguing throughout this case. And then two, the second district properly determined, if the court gets to that second argument, that the unconstitutional conditions doctrine likewise doesn't have application here. Because the two elements are satisfied. One, there's an essential nexus. And two, there's a rough proportionality that exists here. And then three, is the second district properly found. Plaintiff, contrary to his arguments, plaintiff in the second amendment to the annexation agreement, in fact did agree to pay the annexation fee. They agreed they would pay it upon termination of this case if it's in favor of the county. That's unequivocal. That was a negotiated term of their annexation agreement with Mundelein. And with that said, the first argument I want to turn to is the impact fee law. And it's not application in this case. There are two things plaintiff steers this court away from, it doesn't touch. First, is under the Illinois Municipal Code, the Illinois Municipal Code specifically authorizes, by way of an annexation agreement, the donation of monies and land. And in particular, monies in the context of an IGA fee, such as we have here. And you don't see that ever mentioned by plaintiffs throughout the whole process of this case. But that's a critical, that is the critical aspect. And that is the issue that went up before the second district. The issue was, IGA fees that are flowing through an annexation agreement is voluntarily entered into between a developer and a municipality. And negotiated between a developer and a municipality, which is what occurred here. Two, with regard to the impact fee law, it clearly and unambiguously defines the term road impact fee in section 5-903 as a fee imposed as a condition to the issuance of a building permit or a certificate of occupancy. Neither of those are an issue here. Again, we have a fee flowing through an annexation agreement that is not at issue with regard to the issuance of a building permit or certificate of occupancy. Consequently, the impact fee law does not have application in this case. The legislature, they decided the scope of what the impact fee law was going to apply to. And in this case, they limited it to fees that, again, are triggered by the issuance of a building permit or certificate of occupancy. In this case, with regard to the IGA, it provides that payment of fees are to be a condition of annexation into a village, one of the villages participating. In this case, when we originally entered into the IGA, the county, and the villages in 2009, there were three villages. Mundelein was one of those villages. It had an obligation under that IGA when it entered into an annexation agreement to go ahead and make as part of that annexation agreement to provide for the payment of those IGA fees. When we had parcels one and two, for whatever reason, that didn't happen. It wasn't included, but when litigation began eight months later, when they finalized that second amendment, they'd had ongoing negotiations between Mundelein and Plaintiff. And at that point, they made the commercial business decision on Plaintiff's part to include a provision for payment of those fees. Upon termination of the case, if that termination is in favor of the county. So to say they didn't agree to pay the fee, well, that's not correct. And I think the second district correctly noted in its decision that, in fact, no, you have agreed. We've fought against you. You've agreed you'll pay the fees. You're responsible to pay the fees. And that hasn't changed. But in essence, they were challenging the fee. They said we'll pay if we lose. Is that what happened? Well, in essence, they said, yes, we get to continue on with our litigation and challenge the fees. But if we lose, we're going to pay those fees. And it's not we're going to reimburse Mundelein. We're responsible for payment of the IGA fees. Plain and simple. So that issue is a nonissue. And I think even in the reply brief, and I have a page here. But in the reply brief, they say that. And I think it's on page 11, and it leads into page 12 of the reply brief. They admit, yes, if we lose, we're responsible for payment of the fees. So that's a nonissue when it comes to that. Counselor, your opponent says that that was payment under protest. He doesn't think it's a nonissue. Well, it's not payment under protest. It's upon termination. Their language under the Second Amendment to the annexation agreement. And every annexation agreement, I should note this, is a contractual relationship. Not only is it authorized by the Illinois legislature for this type of payment of the fee. But it also indicates it's a contractual arrangement voluntarily entered into between a municipality and a developer. Which is what we have here. And while, yes, they carved out an exception that until the litigation terminates, we will not have to pay the fee. It's quite clear under the language of the Second Amendment that if upon termination that litigation is in favor of the county, well then we're going to be responsible for that fee and we're going to pay it. So with that said, when we're looking at the plain statutory language, it's clear. They, under the Impact Fee Law, the Impact Fee Law does not have an application here. Nor should. It's for the legislature, if they intend to expand the scope of the Impact Fee Law, that's something for them to do. They've clearly and plainly defined what it applies to and what a road impact fee is. And if you have clear and unambiguous language, then that is what has to be applied. And certainly a fee formed through an annexation agreement entered into between a developer and a village does not fall within the four corners of the definition. It's not based on the issuance of a building permit. It's certainly not based on the issuance of a certificate of occupancy. And as such, the Impact Fee Law is not an issue. And that leads into why the Northern Illinois decision, it also has no application in this case. Because again, one, it dealt with, they were looking at the predecessor to the current version of the Impact Fee Law and the current Impact Fee Law and its adoption by DuPage County through ordinance, their attempt to implement it through their ordinances. Again, that case didn't deal with an annexation agreement. And as a critical distinction, based on that, Northern Illinois does not have an application in this case. And it really has no impact at all on the decision. As you've heard, Plaintiff speaks repeatedly about how it's somehow an end around on the Impact Fee Law. But it can't be an end around when you don't fall within the four corners of the Impact Fee Law. Certainly in this situation, and the second district decision was limited to what was brought before it, which was imposition of IGA fees through an annexation agreement. And that's what that decision speaks to. That's what that decision stands for. It's not this broad-based decision that council wants it to be. When we have an annexation agreement, IGA fees could be imposed because they don't fall under the Impact Fee Law. The Impact Fee Law, under its general purpose, the clause says, it's also the intent of the General Assembly to preserve the authority of elected local government officials to adopt and implement road improvement impact fee ordinances or resolution which adhere to the minimum standards and procedures adopted in this division. So do you dispute by saying that, this is the intent of the legislature, that the proportionality provision has to be considered in order for impact fees to be incurred by developers or landowners, that that is only limited to this statute and not more broadly, as this general purpose seems to indicate? No, I think that general purpose is talking about implementing the Impact Fee Law that various municipalities and other governmental agencies, they can adopt the Impact Fee Law for ordinances. But again, you've got to fall within the four corners of what the legislature said the Impact Fee Law applies to. And they're very definitive about that. And it's limited to fees imposed by whether they're conditional on issuance of a building permit or a certificate of occupancy. And if they don't fall within that range, which we don't have here with the annexation agreement, and the fees voluntarily flowing through that, then the Impact Fee Law just doesn't have an application. But it does allow for both the municipalities and the units of government and the landowners to agree to a different trigger. It says that they can be paid either at the time of the issuance of the building permit or certificate of occupancy. But then it goes on another provision to say, or by agreement, at a time designated by agreement. Would that include an agreement such as an annexation agreement, an intergovernmental agreement? Again, I think as the 2nd District pointed out, that section, I think you're talking about section 912, while it gives certain flexibility to developer property owners to fall within the bounds of the Impact Fee Law as to when payments are going to come due, including an agreement maybe to pay it sooner or later, that doesn't change the definition of what's subject to the Impact Fee Law, which again, I've said it repeatedly, so I apologize, but it's a fee triggered, it's contingent on the issuance of the building permit or certificate of occupancy. And if one of those two aren't triggered, then you're not within the Impact Fee Law. And that those, you know, those options with regard to payment under 912 don't change that definition and what the actual Impact Fee Law applies to, and I would say the 2nd District correctly noted that in their decision. You know, and the same argument is true as the 2nd District pointed out with regard to section 911. You know, again, that just talked about the timing of the fee assessment, and it's the same argument, while again, it talks about when the fees, you know, may be assessed, it doesn't change the definition. Again, the definition is clear, you've got one or two triggers, and if you don't satisfy those, which we don't hear, Impact Fee Law has no application. 2nd District sort of thoroughly analyzed that and correctly found, in this case, the Impact Fee Law just does not apply. Consequently, turning to the 2nd argument, because Counseling kind of briefly alluded to it with its constitutionality. First, as we noted in our response brief, when you look at Chapter 1 of the Declaratory Judgment Action, it's not really, it's not based, it's based on the Impact Fee Law, and that's what he complains about. It's only in one paragraph, paragraph 38 of Count 1, where in general fashion, plaintiff says, they have a legal, tangible interest in avoiding payment of unconstitutional road improvement impact fees to the county. But nowhere else within Count 1 do they mention anything about the IGA and the fees flowing through it being somehow unconstitutional. You go look at the Wherefore Clause, again, there's no request for relief concerning constitutionality. Really, under Count 1, the only issue was, and is, does it violate the Impact Fee Law? I think, as I've discussed in detail, and as the 2nd District correctly found, no, it does not. It doesn't fall within the definition of road improvement impact fee. Accidentally, the Impact Fee Law doesn't apply. Nevertheless, even somehow, if the court finds, okay, they flood it and they raise constitutionality sufficiently, the Unconstitutional Conditions Doctrine has no application here, as the 2nd District found. First, you've got to look at, is there a discretionary benefit even at issue? And as we pointed out, parties to an annexation agreement, and it kind of leads into this, this reason why there isn't a discretionary benefit at issue. Parties to an annexation agreement can't agree because it's contractual. Courts have noted in Illinois they can't agree to even contract away constitutional rights if they have them. And it makes sense because we're dealing with an annexation agreement where you don't have a right to annex into a village. The plaintiff didn't have a right to annex his property in Illinois. That was a negotiated, voluntary annexation agreement entered into between those 2 parties where the village was granted certain things. It was seeking, so was plaintiff. And, you know, one thing I wanted to note with regard to that, that annex, the 3 annexation agreements, when you look, there are various fees that are set out in those annexation agreements. And the annexation agreements reference their importance with the Illinois Municipal Code, the sections we've cited. But they provide for, upon certain triggers, plaintiff to pay various fees. And I just wanted to find out, or list out some of these fees. These impact fees, which are listed in Section, this is in Section 784 of each of the 3 agreements. Now it's the second agreement that finally addresses the IJA fees. But there were a number of other fees which are on a per acre basis that plaintiffs agreed to. In accordance with the annexation agreement, which is normal practice under the Illinois Municipal Code. If you look, there's a fee called annexation. There is a capital development fee, a sewer add-on fee, a water add-on fee, transportation fee, stormwater fee, tree replacement, and a downtown fee. So there's all these various fees that, in accordance with the annexation agreement, they've agreed to include. Because they made the decision, hey, we want to add to our commercial clean field operation. We have two parcels that total about 16 acres. Well, now we've got this other parcel that's approximately 35 acres that's going to help us out. We want to get that in. And they go through the voluntary contractual negotiations. And they come to their terms on that agreement, which included, finally, provision for the IJA fees. So our argument would be, first, you don't have a discretionary benefit issue. And some, as I say, have run out of time. The second just properly noted that the unconstitutional conditions doctrine does not have application here. Because we do have an essential nexus based on the reasons stated in our brief. And there is a rough proportionality. So for those reasons, we respectfully request that this court affirm the second district decision, which affirmed the trial court's granting summary judgment in favor of the county, and denied O&S cross-motion for summary judgment, and so doing, granted judgment in favor of the county. And against the county line. Thank you very much. Thank you, Counsel. Counsel, you're permitted to reply. Thank you again, Your Honor. A couple of points in rebuttal. Counsel was asked a question about, in gist it was, the IFL requires the fees to be paid at the time of a building permit, or issuance of a certificate of occupancy, or the parties can agree in an annexation agreement, for example. That addresses the when of the payment. When the payment is to be made. It doesn't address how the fee, which is required to be paid, is determined. And on that point, the IFL is very clear in setting forth specific procedures in order to achieve its goal. Counsel, is the annexation agreement voluntary to annex the property into any one of those villages? Isn't that a voluntary thing that the developer is seeking? Of course, Your Honor. However, nowhere in any of the free annexation agreements did the developer agree to pay the fee. The court's question seems to presuppose that in the annexation agreement, the developer agreed to pay the fee. What the developer agreed to do, and only in the third annexation agreement, without which the property was not going to be annexed, is if this lawsuit fails, then the developer would pay the fee. That is akin to payment under protest, without even being required to make the payment. It's recognizing the protest, allowing the protest. But the developer is aware that that was one of the conditions that the county was asserting, or the village was asserting. The developer just didn't agree with it. Is that it? Well, at that point in time, the village had been sued by the county for the fee because it was alleged that the village breached the intergovernmental agreement by not requiring the developer to pay the fee at the time of annexation. At no point did this property owner agree to pay the fee unless, of course, its protest, this lawsuit, fails. Like any other payment under protest, that cannot be read to be a voluntary payment of the tax, if you will. It's a payment of the tax if and only if one's protest is denied. Can the municipalities decide, or with the county decide, what terms they're going to put forward for annexation should somebody wish to annex their property to the municipality? Well, that's for the municipality to determine. That's not for the county to determine what the terms of annexation are, with the exception of what happened in the intergovernmental agreement here. What the intergovernmental agreement does in Section 5, it identifies virtually every development-related approval that one would be required to get, from annexation to certificate of occupancy and every single approval in the middle. Zoning relief, grading permits, access permits. For every single one of those, there have to be 20 specific development-related approvals identified in the IGA. For every one of these, this per-acre fee is assessed. And the county's argument and the 2nd District's endorsement says only two of those require the application of the Impact Fee Law. Only two of those circumstances, if the 2nd District affirms, only two of those 20 circumstances will require adherence to the Impact Fee Law, which is designed to assure that impact fees assessed for road improvements are fair and equitable. That is simply absurd. That cannot be what the legislature intended, nor this court intended, by recognizing and endorsing the uniquely and specifically and uniquely attributable test. The single most stringent requirement of governmental entities in assessing road improvement impact fees. But if the 2nd District is affirmed, then every single governmental entity going forward will be allowed to look at that menu of options, all of those 20-plus approvals that are attendant to development, and say, do we want to assess this fee on whatever basis we choose at any time other than issuance of a building permit or a certificate of occupancy? And if we make that election to identify any other time at which that fee is to be assessed, we don't have to follow the Impact Fee Law. We don't have to go through that rigorous analysis that the Impact Fee Law requires. The Impact Fee Law, or compliance with the Impact Fee Law, becomes an elective. It's an option. And I can't look into the mind of governmental entities, but what governmental entity would not elect to opt out of compliance with the Impact Fee Law and impose whatever fee it wanted or thought it could obtain from property owners in order to defray the cost of road improvements? That may make good business sense, but it does not make for good governance. That is not what the road improvement impact fee was designed to protect. It was to protect the rights of developers, property owners, to develop their property, and in doing so, pay their proportionate share. Not whatever share is allocated to them by whatever governmental entity chooses to impose the fee. That is not just. That is not what the legislature nor this court have intended for decades. Your Honors, unless there are further questions, unlike most before you I suspect, I'm going to stop at this point unless there are further questions. But thank you for your time. I genuinely and sincerely ask the court to reverse the Second District's decision because without that action, the road improvement impact fee law will no longer exist in any protective fashion for the rights of property owners and developers. Thank you. Thank you very much, Counsel. Agenda number 18, number 130323, Habdad v. The County of Lake, will be taken under advisement. Thank you both, all, for your arguments.